IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


UNITED STATES OF AMERICA        )    CASE NO. 1:08CR373
                                )
        vs.                     )
                                )    Winston-Salem, North Carolina
LAZARO GUTIERREZ-BUSTOS         )    June 22, 2009
_____          9:56 a.m.



TRANSCRIPT OF THE **SENTENCING HEARING**
BEFORE THE HONORABLE THOMAS D. SCHROEDER
UNITED STATES DISTRICT JUDGE


<u>APPEARANCES:</u>

For the Government:        ARNOLD HUSSER, AUSA
                           Office of the U.S. Attorney
                           101 S. Edgeworth Street, 4th Floor
                           Greensboro, North Carolina 27401


For the Defendant:         JOSEPH M. WILSON, JR.,ESQ.
                           Browne Felbotte Wilson Horn & Webb
                           P.O Box 2247
                           Durham, North Carolina 27702


Court Reporter:            BRIANA NESBIT, RPR
                           Official Court Reporter
                           P.O. Box 20991
                           Winston-Salem, North Carolina 27120




Proceedings recorded by mechanical stenotype reporter.
Transcript produced by computer-aided transcription.

```
 1              P R O C E E D I N G S
 2        (The Defendant was present.)
 3             THE COURT:  Mr. Husser?
 4             MR. HUSSER:  Your Honor, if it please the Court, on
 5    for sentencing is United States of America versus Lazaro
 6    Gutierrez-Bustos found at 1:08CR373-1.  Mr. Bustos is
 7    represented by Mr. Joseph Wilson, Jr.  Ms. Bojanini is the
 8    interpreter in the matter.
 9        The Government has filed a position paper which includes a
10    motion for departure.  The defendant himself has filed two
11    motions.
12             MR. WILSON:  That's correct, Your Honor.
13             THE COURT:  Let me just say for the record that
14    Ms. Bojanini has previously been sworn and is present here, as
15    Mr. Husser indicated.
16        We are here for a sentencing hearing, and let the record
17    also reflect that a probation officer is here as well, and I
18    have a flurry of motions.  I think we need to take those
19    probably one by one.
20        Mr. Wilson, you were about to say something.  Let me hear
21    from you.
22             MR. WILSON:  Yes, Your Honor.  I think the Court
23    might inquire as to what Mr. Bustos would like for me to do.  I
24    spoke with him yesterday.  It appeared that he wanted me to
25    argue the matter of sentencing today.  However, I would like
```

1    for the Court to --

2              THE COURT:  All right.  Mr. Bustos, please stand up,

3    sir.  Do I understand you speak English?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Have you been able to understand what's

6    transpired here up until now?

7              THE DEFENDANT:  Yes.

8              THE COURT:  You filed several motions, or at least

9    two of them.  One of them is a -- bear with me here.  One of

10   them is a motion for ineffective assistance of counsel, which

11   is Document 21, and you also filed a pro se response to the

12   Government's motion for upward departure.  So let me hear from

13   you.

14             THE DEFENDANT:  Your Honor, I filed those motions.  I

15   spoke to my attorney yesterday, and we spoke about the

16   ineffective counsel.  I told him that -- he told me that he is

17   going to represent me, and I told him that I will give him a

18   chance to represent me.  So I would like to proceed with the

19   matter.

20             THE COURT:  All right.

21             THE DEFENDANT:  The other motion that I filed, he is

22   going to argue it for me.  Thank you.

23             THE COURT:  All right.  So are you prepared to

24   proceed today?

25             THE DEFENDANT:  Yes.

1      **THE COURT:**  All right.  Let me ask you one question

2  and, that is, in your motion for ineffective assistance of

3  counsel, you make a statement in there where you proclaimed

4  your innocence, said you were innocent.

5      I want to make sure I understand one issue; and,

6  Mr. Wilson, I will raise this to you as well, and that is

7  whether the Court is being asked to interpret that as a motion

8  to withdraw any guilty plea in this case?

9      **MR. WILSON:**  It is not my intention to move to

10  withdraw the guilty plea.

11      **THE COURT:**  Do you have any intention, Mr. Bustos, of

12  withdrawing -- trying to withdraw your plea in this case?

13      **THE DEFENDANT:**  Your Honor, I used that as backup

14  law.  So that's pretty much what I used as a reference, but I

15  am not using it as not guilty.

16      **THE COURT:**  Do you intend to withdraw your guilty

17  plea today?

18      **THE DEFENDANT:**  No, I don't, not at this moment.

19      **THE COURT:**  All right.  Thank you, sir.  You may have

20  a seat.

21      So I am going to treat the motion for ineffective

22  assistance, Document 21, as being withdrawn as of today.  Do

23  you understand that, Mr. Bustos?

24      **THE DEFENDANT:**  Yes.

25      **THE COURT:**  All right.  Is that satisfactory with

1  you?

2          **THE DEFENDANT:** Yes.

3          **THE COURT:** All right. Mr. Wilson, I think all the

4  other filings relate to the Government's request for an upward

5  departure; is that right?

6          **MR. WILSON:** That's right, Your Honor.

7          **THE COURT:** We are here today then for sentencing.

8  Have you received a copy of the presence report, Mr. Wilson?

9          **MR. WILSON:** I have, Your Honor.

10         **THE COURT:** Have you reviewed it with your client?

11         **MR. WILSON:** I have, Your Honor.

12         **THE COURT:** Are you prepared to proceed today with

13  sentencing?

14         **MR. WILSON:** Yes.

15         **THE COURT:** Mr. Bustos, let me ask you: Have you

16  reviewed the presence report in your case?

17         **THE DEFENDANT:** Yes, I have.

18         **THE COURT:** Have you done that with your lawyer?

19         **THE DEFENDANT:** Yes, I have.

20         **THE COURT:** Can you read English?

21         **THE DEFENDANT:** Yes.

22         **THE COURT:** Could you read the report in your case?

23         **THE DEFENDANT:** Yes.

24         **THE COURT:** Are you satisfied that you understand the

25  contents of your presence report?

1          **THE DEFENDANT:**  What do you mean by that?

2          **THE COURT:**  Do you understand the report?

3          **THE DEFENDANT:**  Yes, I understand some of it, but I

4   disagree with some of it.  That's why I filed the other motion.

5          **THE COURT:**  I understand you may not agree with

6   what's in the report.  My question is do you at least

7   understand what the report says?

8          **THE DEFENDANT:**  Yes, Your Honor.

9          **THE COURT:**  Thank you.  You may have a seat, sir.

10      All right.  Are there objections to the presentence report

11  from the defendant?

12         **MR. WILSON:**  No, Your Honor.  I only ask to be heard

13  with regard to the upward departure.

14         **THE COURT:**  All right.  Any objection by the

15  Government?

16         **MR. HUSSER:**  No, Your Honor.

17         **THE COURT:**  All right.  The Court adopts the

18  presentence report without change, and as to all matters in the

19  presentence report, the Court will adopt as findings of fact.

20      We are here to consider the imposition of a sentence.  The

21  defendant has pled guilty to a charge of illegal re-entry of a

22  deported alien after an aggravated felony conviction in

23  violation of Title 8 of the U.S. Code, Sections 1326(a) and

24  (b)(2).

25      My notes reflect I accepted the plea at the plea hearing;

 1 | is that correct?

 2 |       **MR. WILSON:**  That's correct, Your Honor.

 3 |       **THE COURT:**  All right.  First, I am going to

 4 | calculate the guidelines.  Then we'll hear you as to any

 5 | departure from the guidelines.

 6 |     Taking the guidelines into account on an advisory basis,

 7 | it would appear that the following calculations result:  Total

 8 | offense level is 21; criminal history category of IV; guideline

 9 | range is 57 to 71 months; there is a statutory maximum of 20

10 | years; the guideline supervised release range is 2 to 3 years;

11 | the fine range is $7,500 to $75,000; restitution is not

12 | applicable.

13 |     Do the parties agree that these are the appropriate

14 | guideline ranges in the case at this time?

15 |       **MR. WILSON:**  Yes, Your Honor.

16 |       **MR. HUSSER:**  Yes, Your Honor.

17 |       **THE COURT:**  All right.  The Court has considered the

18 | calculations that result from an application of the guidelines,

19 | and the Court finds that they have been appropriately

20 | determined.

21 |     Now, I do have a motion for a departure by the Government

22 | under Guideline 4A1.3.  Is that right, Mr. Husser?

23 |       **MR. HUSSER:**  That is correct, Your Honor.

24 |       **THE COURT:**  I would be glad to hear from you at this

25 | time.

          **MR. HUSSER:**  Your Honor, we have filed a brief in

this motion.  We stand by it.

     Just to add a little bit, his PSR substantially

underrepresents the seriousness of his past criminal history

and the likelihood that he will commit other crimes, and this

circuit indicates in United States v. Lawrence, 349 F.3d 724 at

2003 -- the Fourth Circuit said we can use -- the Court could

use the extensive record of his juvenile offenses if they were

not used in calculating his criminal history points.

     This individual to our knowledge started his criminal life

at age 13 when he was convicted in 1996 of misdemeanor

third-degree malicious mischief, paragraph 19.  Paragraph 20,

1996, he was convicted of misdemeanor third-degree malicious

mischief.  In both of these offenses, he was given no criminal

history points.

     Paragraph 21, he was convicted in 1996 of misdemeanor

fourth-degree assault at age 13.  Paragraph 21, no criminal

history points.  Paragraph 22, 1997, he was 14.  He gets

misdemeanor third-degree malicious mischief, convicted, and no

criminal history points.  Paragraph 23, 1997, he's convicted of

misdemeanor third-degree theft, given no criminal history

points.  These are because the offenses were too old.

     In 1997, he is given three months for a misdemeanor

telephone harassment, age 14.  No criminal history points

again, too old.

Paragraph 25, 1997, he is given three months' supervised probation, convicted of misdemeanor second-degree animal cruelty.  Again, no criminal history points, too old.

Paragraph 26, 1997, 14, misdemeanor unlawful possession of a controlled substance, marijuana, less than 40 grams, given no criminal history points, too old.

Paragraph 27, in 1997, he does get 12 weeks' imprisonment for felony third-degree assault, given no criminal history points.  This is the case where he took a hammer and hit Salvador Bustos on the head two times.  No criminal history points, too old.

Paragraph 28, gets six months' supervised probation, misdemeanor fourth-degree assault.  No criminal history points. He tried to hit an individual with a stick.

Paragraph 29, he does get 65 weeks' imprisonment, felony second-degree assault.  He lunges at his sister with a knife. No criminal history points, too old.

Now, at age -- paragraph 30, age 17, he gets felony second-degree assault, felony drive-by shooting.  There he does get three points, but you can see it is assault and violent conduct.

Paragraph 31, he got misdemeanor assault on a female, a misdemeanor assault on a child under 12.  He gets criminal history points.  One thing the Government notes in this one is he assaults his one-year-old son by pulling him out of his

1 mother's arms and hitting him against the wall. That is

2 disturbing to the Government.

3     Paragraph 32, he gets 24 months, one criminal history

4 point. He gets misdemeanor disorderly conduct.

5     He has got a substantial criminal history, a track record.

6 Many of these were too old to be taken into account. Probation

7 did a correct job.

8     I've been with the U.S. Attorney's Office for 19 years,

9 Your Honor. This one rings the bell. It really does. His

10 track record -- you can look at him and say, not if he is going

11 to commit a crime, it is just when based upon his track record.

12 Nick the Greek, the famous gambler, would probably say, I would

13 give eyes that he will commit another crime.

14     And looking at his -- his background is very aggressive.

15 It is very assaultive. It is very violent; and taking all

16 these facts into consideration and the Government's brief, the

17 Government does ask for an upward departure. We calculate it

18 at the 70- to 87-month range. That would be totally justified,

19 Your Honor, based upon what he's done.

20         **THE COURT:** The upward departure would be the next

21 criminal history category; is that right?

22         **MR. HUSSER:** Yes. The Government would say it is

23 very, very reasonable that the Court, on its own, could

24 probably go higher and totally justified. This is his life.

25 This is his record.

1          THE COURT:  All right.  Anything further?

2          MR. HUSSER:  No, Your Honor.

3          THE COURT:  Thank you.  Mr. Wilson?

4          MR. WILSON:  Your Honor, as the sentencing guidelines

5    state, these juvenile convictions are outdated.

6       I did produce to the Court two cases.  I am familiar with

7    the Lawrence case and Estridge, which allows the Court to

8    consider these outdated juvenile convictions.  However, I think

9    the outdated juvenile conviction provision is there for a

10   purpose, Your Honor.  They are not to basically add on and

11   continue to add on to a young man who had some problems when he

12   was 13 or 14 years old.

13      I think -- I've spent some time with my client.  I think

14   the probation report basically says that he admits he has had

15   some problems with mental illness.  He's struggled with some

16   bipolar disorders.  I can't see where there's been any

17   treatment for that except for what he said that he received in

18   the State of Washington.  I don't believe that was actually

19   verified.  He knew -- the facility knew what he was being

20   treated for, the whole nine yards.

21      And I would argue to the Court he has lived a rough life.

22   He did come from a very, very abusive background.  He was in

23   associations with those who tended to be violent, not only

24   toward other people, but toward him.  He paid for those crimes.

25   He went to court when he was a juvenile.  He was imprisoned for

BRIANA NESBIT, RPR     OFFICIAL COURT REPORTER  (336) 254-7464

1  that particular act.  He also -- at age 17, he went to prison

2  for, I believe, 51 months, which was punishment for his

3  participation in that particular crime.

4      Your Honor, we are here on an illegal re-entry as an

5  aggravated felon.  Obviously, he gets another 16 levels in

6  addition to the base level of 8 that he gets for something that

7  he has done in the past.  What we -- what I appear to see has

8  happened here is the fact that we are getting some factors

9  argued to the Court which tends to, for no better word, Your

10 Honor, pile on with regard to my client.

11      I think -- he's obviously struggled with this.  He

12 accepted responsibility for his illegal re-entry.  He has been

13 before the Court, and he has just tried to say, I understand

14 and I am guilty of this illegal re-entry.  I understand the

15 guideline range.  I understand I have to be punished and

16 deported.

17      He is probably going to be deported, Your Honor.  I can

18 tell you that he knows he is going to be deported; and if we

19 try to just add on more time and more time and more time, I

20 just don't think we are going to get to what the government and

21 the laws are intended to serve with regard to this particular

22 purpose.

23      He has communicated with me well.  He understands

24 basically what you can do, Your Honor.  He understands that

25 everything in his life has been a little bit in turmoil, but he

1  does want to re-emphasize he has struggled oftentimes with

2  these mental disorders.  He would ask the Court to consider

3  that with regard to any type of rehabilitation he may have.

4      However, Your Honor, I would argue to the Court in this

5  particular case, on illegal re-entry, and the fact that these

6  juvenile convictions happened when he was 13 -- the multitude

7  of them when he was 13, 14 years old -- should not be factored

8  in with regard to the sentencing.

9      **THE COURT:**  There was brief you had filed, as I

10 recall it -- I'm looking through my copy -- challenging the

11 ability of the Court to use a juvenile conviction under the

12 guidelines.

13     **MR. WILSON:**  I did, Your Honor.

14     **THE COURT:**  Pardon me?

15     **MR. WILSON:**  I did.

16     **THE COURT:**  My reading of the guidelines indicates

17 that they were amended, it looks like, in November of '92 in

18 4A1.2, and in that post-amendment the concern -- not the

19 concern -- the prohibition on using the youth offenses is gone

20 so that they can be considered.

21     What is your position as to whether the Court has the

22 authority under the guidelines?

23     **MR. WILSON:**  Your Honor, I think the Court has the

24 authority to do that.  However, I would like to point out that

25 some cases have held that these particular juvenile -- outdated

1  juvenile offenses should be excluded, and I did it in support

2  mainly of my client, who I believe; but with regard to the

3  underlying charge and the criminal history, I would just argue

4  to the Court that it was not marrying up with the departure.

5  That's the basis of that.

6      I am aware of the amendment in U.S. v. Lawrence and U.S.

7  v. Estridge.

8          THE COURT:  I was looking at your position paper,

9  which is Document Number 20.  Two of the cases that you had

10 indicated seemed to be before the amendment, United States v.

11 Samuels, 938 F.2d 210, D.C. Circuit case from 1991; and United

12 States v. Thomas, 961 F.2d 1110, a Third Circuit case from

13 1992, both of which were decided before the effective date of

14 the amendment.

15         MR. WILSON:  That's correct, Your Honor.

16         THE COURT:  All right.  United States v. Wheeler,

17 2005 WL 827168, a Tenth Circuit case from 2005, is the third

18 case that you rely upon.  While that is after the amendment, I

19 didn't see any mention of the amendment in the Court's

20 decision.

21     All right.  Anything further?

22         MR. WILSON:  No, Your Honor.

23         THE COURT:  All right.  Mr. Husser, are there --

24 there are particular offenses that the Government has focused

25 on, as I recall, from the Government's briefing?

1          **MR. HUSSER:**  That is correct; on page 7 of our brief.

2          **THE COURT:**  And those are the offenses in the PSR at

3  27, 28 and 29; is that right?

4          **MR. HUSSER:**  That is correct, Your Honor.

5          **THE COURT:**  The defendant -- it looks like he was

6  born August 11, 1982, according to the presentence report.

7  That appears to be unverified.  If that's true, then with

8  respect to the offense in paragraph 27, he would have been 15

9  and a half roughly.  In paragraph 28, he would have been two

10  months short of being 16.  In paragraph 29, he would have been

11  two months short of being 16.  Would that appear to be correct?

12          **MR. HUSSER:**  We would assume so, yes.

13          **THE COURT:**  All right.  Before the motion -- before

14  the Court, rather, is a motion by the Government for an upward

15  departure.  Under United States Sentencing Guideline

16  4A1.3(a)(1), the Court can consider departing upward if

17  reliable information indicates that the defendant's criminal

18  history category substantially underrepresents the seriousness

19  of the defendant's criminal history or the likelihood that the

20  defendant will commit other crimes.

21     Under 4A1.3, the Court can consider prior sentences not

22  used in computing the criminal history category.  Here, the

23  defendant does have an extensive juvenile record.  In

24  considering the seriousness of the past conduct, the Court

25  notes that there are prior sentences for which no criminal

1  history points have been assigned.  The presentence report

2  indicates that the defendant has committed misdemeanors since

3  age 13 and felonies since age 15.  For example, in the

4  presentence report, paragraph 43, the history notes that the

5  defendant assaulted three brothers and one sister.

6        In the category of those for which no criminal history

7  points were given are presentence report paragraphs 27, 28, and

8  29.  Paragraph 27 is a felony third-degree assault on the

9  defendant's brother where the defendant took a hammer and hit

10 his brother in the head two times.  Paragraph 28 is a

11 misdemeanor fourth-degree assault.  The defendant attempted to

12 assault his brother with a stick.  The defendant at the time

13 was two months short of age 16.  Paragraph 29 is a felony

14 second-degree assault where the defendant lunged at his sister

15 with a knife.

16       In the Fourth Circuit, an extensive record of juvenile

17 offenses which have not been used in calculating criminal

18 history points can provide a basis for an upward departure as

19 noted in United States v. Lawrence, 349 F.3d 724 at pages 727

20 and 728.  That is consistent with law that the Court has found

21 from other circuits, including the Eleventh Circuit in United

22 States v. Williams, 989 F.2d 1137, it is a 1993 case; the

23 Eighth Circuit, United States v. Donelson, D-O-N-E-L-S-O-N, 450

24 F.3d 768, it is a 2006 case; and United States v. Doe, D-O-E,

25 18 F.3d 431, that's a Fourth Circuit case; also United States

1  v. Gammon, G-A-M-M-O-N, 961 F.2d 103, that is a Seventh Circuit

2  case.

3      The Court has also considered the likelihood that the

4  defendant will commit other crimes.  The Court concludes that

5  the likelihood the defendant will, in fact, commit other crimes

6  is high.  That is reflected by the defendant's record.  In

7  addition to the items in paragraphs 27, 28, 29 in the

8  presentence report, there is a further criminal history of the

9  defendant.  It shows a consistent pattern of profound history

10 of criminal misconduct that manifests proclivity towards

11 recidivism.

12     In paragraph 30, the defendant was convicted of felony

13 assault and drive-by shooting.  In paragraph 31, the defendant

14 was convicted of misdemeanor assault on a female and on a

15 child -- the mother of his child and his child.  The defendant

16 pulled the boy from his mother's arms and hit him against the

17 wall.

18     The defendant's been convicted of disorderly conduct in

19 paragraph 32 and assaultive conduct toward a security guard.

20 The defendant also committed the instant offense while on

21 probation less than one year after his second deportation.

22     The Court concludes that the guidelines do not adequately

23 reflect the defendant's -- the seriousness of his criminal

24 history and indicates the -- the criminal history category

25 presently indicates it underrepresents the seriousness of the

1  defendant's criminal history and the likelihood the defendant

2  will commit other crimes.

3      The Court will apply the next higher category pursuant to

4  4A1.3(a)(4)(A) of the sentencing guidelines which would be a

5  Category V.  Considering just the three uncounted convictions

6  in paragraphs 27, 28, and 29 would put the defendant alone in

7  Category V, criminal history.

8      The Court will grant the motion for upward departure based

9  on that finding and recalculate the guidelines, putting the

10 defendant in Criminal History Category V.  So recalculating

11 then would be a total offense level of 21, criminal history

12 category of V; imprisonment range would be 70 to 87 months.

13     Yes, Mr. Wilson?

14         **MR. WILSON:**  I was making sure you said the Criminal

15 History Category V for that?

16         **THE COURT:**  Yes.  I believe all the other

17 calculations remain the same?

18         **PROBATION OFFICER:**  Yes, Your Honor.

19         **THE COURT:**  Thank you.  In considering the guidelines

20 on an advisory basis and in addition to that and considering

21 the factors under Title 18 of the U.S. Code, Section 3553(a),

22 I'll hear from you now as to any factors you would like to

23 present to assist the Court in determining an appropriate

24 sentence.

25         **MR. WILSON:**  Your Honor, as I said, Mr. Bustos does

1  suffer from a mental illness that he's been treated for

2  throughout his -- well, throughout the juvenile part and while,

3  I believe, he was incarcerated in the State of Washington.

4      He has told me that he's -- he has been depressed here in

5  the jail.  He's also told me he has heard some voices, and I

6  believe the best thing, I would argue to the Court, is to allow

7  him some mental illness treatment once he is in the system.

8      Your Honor, it seems that he's also had some bouts with

9  some controlled substances in the past:  Methamphetamine,

10  mainly hallucinogenics, and marijuana.  I would ask the Court

11  to consider substance abuse treatment for Mr. Bustos.

12      Your Honor, like I argued earlier, you know, he has been

13  in prison.  He has done some things.  He is being punished for

14  this.  I would ask the Court to consider the fact that he will

15  be deported as a result of all this and would ask the Court to

16  give him a sentence in the low range, Your Honor.

17          **THE COURT:**  All right.  Mr. Husser?

18          **MR. HUSSER:**  Your Honor, please the Court, the

19  Government would recommend 87 months at the top of the

20  guidelines based upon everything that's been presented.  He

21  deserves it.

22          **THE COURT:**  Would the Government have any comment on

23  his mental health situation?

24          **MR. HUSSER:**  No, Your Honor.  This is just what has

25  been presented to us.  I saw nothing back in the presentence

1    report that indicated this.  It sounds as if it is a defendant

2    who says he was sorry because he was caught.

3            **THE COURT:**  Is he taking medication, Mr. Wilson?

4            **MR. WILSON:**  Yes, Your Honor.  I believe he could

5    address the Court as to what kind.  He's told me yesterday that

6    he's taking some medication.

7            **THE DEFENDANT:**  Yes, Your Honor.  I have taken

8    medication before since I was a juvenile.

9            **THE COURT:**  What did you take?

10            **THE DEFENDANT:**  I took Zyprexa, Haldol -- they used

11    to give me a shot -- and I took Cogentin.  I took some other

12    drugs because, when I was a juvenile, the drugs messed me up.

13    I ended up in a mental health hospital.  I have records of

14    that.  Washington has records of that, too.

15        When I was in prison, I suffered from mental health when I

16    did my 51-month period.  I went to a mental health place there,

17    and to this day, I'm still suffering from mental health.

18            **THE COURT:**  Are you on medication today?

19            **THE DEFENDANT:**  I tried it back where I am at.  I've

20    told -- I filed for sick call, and I told them that I wanted to

21    see a mental health expert.  The doctor there, he's a

22    physician, I think, and I told him that I wanted to see mental

23    health.  He told me, well, I can give you the medication.  I

24    told him that I wanted to see mental health before I take

25    anything so that way they know, and they never assisted me.

1      **THE COURT:**  When was the last time you've had

2   medication?

3      **THE DEFENDANT:**  The last time I had medication was --

4   the last -- since the first time I got to court.  I think it

5   was in 2004, but, Your Honor, I haven't been taking medication

6   because I can't afford it.  I don't have no way to help myself

7   in that matter.

8      **THE COURT:**  All right.  Thank you.  You may have a

9   seat.  Let me ask probation to step up here, please.

10      (Off-the-record discussion.)

11      **THE COURT:**  All right.  Mr. Bustos, is there anything

12   you would like to say on your own behalf at this time before I

13   render a decision?  I will advise you that you have no

14   obligation to speak; but if you would like to speak, now would

15   be the appropriate time, sir.

16      **THE DEFENDANT:**  Yes, Your Honor.  I would like to say

17   that I apologize for coming back to this country.  The only

18   reason I came back is because my family knew that I suffer from

19   mental illness.  I don't know Mexico.  I felt like that I was

20   lost over there.  All my family is over here.  So that's why I

21   came back.  I deeply apologize for that.

22      Now today I am a new person.  I am trying to change my

23   life.  I turned my life to God.  I asked him to forgive me for

24   my sins.

25      I also lost my brother to cancer and that has really

BRIANA NESBIT, RPR      OFFICIAL COURT REPORTER   (336) 254-7464

1 | impacted my life and that has really -- and my mental ability
2 | to face life dealing with that has changed me a lot. So I have
3 | given my mom a lot of trouble, and she don't deserve it. She
4 | don't deserve it.

5 | I just want to say that when I do get deported that I am
6 | not going to come back here, that I didn't know it was going to
7 | get me into this much trouble. Suffering from my condition and
8 | suffering from mental health, I am trying to maintain and deal
9 | through -- deal with it day by day, you know, but I really
10 | don't know what is going to happen.

11 | I just hope that you make the right decision and I
12 | deeply -- like I said, I regret coming back, and I won't come
13 | back.

14 | I know in my country it is hard out there because of the
15 | cartels and stuff like that that's going on over there, a lot
16 | of murders and stuff, but I really -- I don't want to be a part
17 | of that. I want to change my life. I want to make a change.

18 | To this day, I suffer from mental health. The only reason
19 | I never take medication is I can't afford it. When I get
20 | deported, I can't afford it over there either. That's all I
21 | got to say, Your Honor.

22 | **THE COURT:** All right. Thank you, sir.

23 | The Court has taken the sentencing guidelines into account
24 | on an advisory basis. The Court notes the total offense level
25 | is 21. The criminal history category now is V. The

1 imprisonment range is 70 to 87 months.

2     The Court has noted the sentencing position papers by the

3 parties, arguments of counsel, and the statement of the

4 defendant himself. The Court has also taken into account all

5 the 3553(a) factors in determining an appropriate sentence in

6 the case.

7     The sentence the Court will impose will be sufficient but

8 not greater than necessary to meet the sentencing objectives of

9 Section 3553(a) and any sentencing objectives that may apply as

10 well under the advisory guidelines.

11     The Court finds that the sentence it will impose is 82

12 months and that such sentence is reasonable in this case. The

13 Court notes that the sentence is within the guideline range.

14     I've specifically taken into account all the 3553(a)

15 factors, but I want to comment on those that effected the

16 sentence within this range.

17     This is the third illegal re-entry from this defendant

18 into the country. He's been deported twice. Each time, he's

19 entered and re-entered the United States within the same month

20 that he was deported, showing disrespect for the law of the

21 United States.

22     I've also considered the need to afford adequate

23 deterrence to criminal conduct. Prior imprisonment sentences

24 for this defendant have not deterred him from criminal conduct.

25 For example, he was sentenced to 51 months in prison for a

1  felony second-degree assault, paragraph 30 of the presentence

2  report.  He was sentenced to 65 weeks of imprisonment for

3  felony second-degree assault.  That's paragraph 29.  He's had

4  multiple periods of probationary sentences, and the defendant

5  continues to engage in criminal conduct.

6      I've also considered the need to protect the public.  The

7  defendant does have a history of assaultive behavior, as

8  reflected in multiple convictions, paragraphs 27, 28 and 29,

9  which we already spoke to:  The felony third-degree assault,

10  misdemeanor fourth-degree assault, and felony second-degree

11  assault.  In paragraph 30, there is a felony second-degree

12  assault.  In paragraph 31, assault on a female and assault on a

13  child under 12.  In paragraph 32, a disorderly conduct.

14      I've also considered the need for the defendant to receive

15  correctional treatment in the most effective manner.  The

16  defendant is in need of mental health treatment.  He has some

17  anger management problems, among others.

18      In considering those factors and having considered the

19  advisory guidelines and the factors under Title 18, Section

20  3553(a), the Court finds that a sentence of 82 months is

21  reasonable under the facts of this case.

22      It is therefore ordered that the defendant be committed to

23  the custody of the U.S. Bureau of Prisons for a term of 82

24  months followed by 3 years of supervised release.

25      The defendant is ordered to pay a special assessment of

1   $100.  That is due and payable immediately.  To the extent he

2   cannot immediately comply, the Court will recommend that he

3   participate in the Inmate Financial Responsibility Program.

4   Any fine is waived based on inability to pay.

5       In addition to the usual terms of supervised release, it

6   is ordered that the defendant shall submit to substance abuse

7   testing at any time as directed by the probation officer.  The

8   defendant shall cooperatively participate in a substance abuse

9   treatment program, which may include drug testing and inpatient

10  and residential treatment, and to pay for treatment services as

11  directed by the probation officer.  During the course of

12  treatment, the defendant shall abstain from the use of

13  alcoholic beverages.

14      The defendant shall cooperatively participate in a mental

15  health treatment program, which may include inpatient and

16  residential treatment, and to pay for treatment services as

17  directed by the probation officer.

18      It is ordered that upon completion of the custody sentence

19  the defendant shall surrender to a duly authorized Immigration

20  and Customs Enforcement Official in accordance with established

21  procedures provided by the Immigration and Naturalization Act,

22  Title 8 of the U.S. Code, Section 1101.

23      If ordered deported, the defendant shall remain outside

24  the United States during the term of supervision and shall not

25  re-enter the United States without the permission of the United

1  States Attorney General or the Secretary of the Department of

2  Homeland Security.

3      The Court will recommend that the defendant be given a

4  psychological evaluation and any recommended treatment while in

5  the custody of the Bureau of Prisons.

6      Any other requests from the defendant as to Bureau of

7  Prisons?

8              **MR. WILSON:**  No, Your Honor.

9              **THE COURT:**  Anything from the Government?

10             **MR. HUSSER:**  No, Your Honor.

11             **THE COURT:**  Mr. Bustos, you are caught between two

12  worlds.  You've got some family in the United States, but your

13  citizenship is in Mexico.  Obviously, that's a problem for you.

14  The law of the United States is that you are not to re-enter

15  the country without the permission of the Attorney General of

16  the United States, and I have to enforce that law.

17      While you are in prison, you will get some treatment for

18  your mental health issues.  Beyond that, it will be up to you

19  and your family as to how you are going to continue to get

20  treatment and pay for that.  Perhaps you can work something out

21  with your family to get the medication you need.

22      I am going to advise you strongly that -- you've been

23  deported now twice.  This will be your third time after you

24  serve your prison sentence.  The penalties will only be stiffer

25  if you come back again.  I know that puts you in a difficult

BRIANA NESBIT, RPR      OFFICIAL COURT REPORTER   (336) 254-7464

1 position, but that is the law. I just advise you that that is,

2 in fact, the situation so that there is no mistake if you

3 violate the law the next time because the punishment will be

4 more severe. I wish good luck to you in prison.

5     Have you advised your client about rights of appeal that

6 he may have?

7           **MR. WILSON:** Yes, Your Honor.

8           **THE COURT:** Please make sure that if he chooses to

9 file notice of appeal, that he must do so in writing within 10

10 days of the entry of the Court's judgment. He is in your

11 custody.

12     (END OF PROCEEDINGS AT 10:54 A.M.)

13

14                           * * * * * *

15

16

17

18

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT

2  MIDDLE DISTRICT OF NORTH CAROLINA

3  CERTIFICATE OF REPORTER

4

5

6         I,  Briana L. Nesbit, Official Court Reporter,

7  certify that the foregoing transcript is a true and correct

8  transcript of the proceedings in the above-entitled matter.

9

10        Dated this 25th day of April 2011.

11

12

13  _____
                  Briana L. Nesbit, RPR
14                Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25